**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| ARCAPITA BANK B.S.C.(c), *et al.* | Case No. 12-11076 (SHL) |
| Reorganized Debtors. | (Jointly Administered) |

----------------------------------------------------------------x
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c),
*et al.*,

                Plaintiff,

                vs.

                                                   Adv. No. 13-01434 (SHL)

BAHRAIN ISLAMIC BANK,

                Defendant.
----------------------------------------------------------------x
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c),
*et al.*,

                Plaintiff,

                vs.

                                                   Adv. No. 13-01435 (SHL)

TADHAMON CAPITAL B.S.C.,

                Defendant.
----------------------------------------------------------------x

## MODIFIED BENCH RULING ON
## DEFENDANTS' MOTIONS FOR RECONSIDERATION

A P P E A R A N C E S:

MILBANK, TWEED, HADLEY & McCLOY LLP
*Counsel for Official Committee of Unsecured Creditors*
*of Arcapita Bank B.S.C.(c), et al.*
  By:   Andrew M. Leblanc, Esq.
1850 K Street, NW, Suite 1100
Washington, D.C. 20006

K&L GATES LLP
*Counsel for Bahrain Islamic Bank and Tadhamon Capital B.S.C.*
  By:  Robert Honeywell, Esq.
       John A. Bicks, Esq.
       Priya Chadha, Esq.
599 Lexington Avenue
New York, New York 10022

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the motion of Defendants Bahrain Islamic Bank and Tadhamon Capital B.S.C. to reconsider the Court's memorandum decision issued on October 13, 2017 and the related orders entered on November 3, 2017.[1] The memorandum decision and orders denied the Defendants' motions to dismiss their respective adversary proceedings, and held that (1) the facts of the case weighed against this Court's abstention based on international comity, and (2) the presumption against extraterritoriality was inapplicable because the case did not involve an extraterritorial application of the statute in question.

      The Defendants offer two reasons for the requested relief. First, they argue that there has been an intervening change in controlling law. Second, they believe that this Court has overlooked controlling decisional authority when making its ruling. But for the reasons to be discussed, the Court denies the Defendants' motion.

      The relief sought is under Rule 59 of the Federal Rules of Civil Procedure, which is made applicable to these adversary proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure. The standard for granting a motion under Federal Rule 59(e) is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*,

---

[1] This written decision memorializes the Court's bench ruling that was read into the record on January 16, 2018. Because of its origins as a bench ruling, this decision has a more conversational tone.

2

684 F.3d 36, 52 (2d Cir. 2012). "In other words, reconsideration is appropriate only where there is an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice." *Perez v. Progenics Pharmaceuticals, Inc.*, 46 F. Supp.3d 310, 314 (S.D.N.Y. 2014) (internal citations omitted). Such request for relief "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Tonga Partners*, 684 F.3d at 52 (internal citations omitted). Thus, reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (internal citations omitted). The burden for such a motion rests with the movant. *See In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986).

    A.  Intervening Change in Controlling Law

As to their first argument, the Defendants rely on a recent Second Circuit decision in *Bascunan v. Elsaca*, 874 F.3d 806 (2d Cir. 2017). Defendants contend that *Bascunan* represents an intervening change in law that requires this Court to modify its memorandum decision, which was issued before *Bascunan*.

In its memorandum decision, this Court found that the presumption against extraterritoriality was inapplicable because the case does not involve extraterritorial application of Section 547 of the Bankruptcy Code. This is because the conduct targeted by Section 547— the transfer of property— took place in the United States. Specifically, the transfers in question were made by the Debtor to the Defendant using New York correspondent bank accounts. *See In re Arcapita Bank B.S.C.(C)*, 575 B.R. 229, 245 (Bankr. S.D.N.Y. 2017). The Defendants argue that under the holding in *Bascunan*, a defendant's momentary use of a U.S. correspondent bank

3

account cannot transform a foreign transaction into a domestic one for purposes of extraterritoriality, and thus *Bascunan* necessitates a reversal of this Court's reliance on the use of the correspondent accounts.

But the *Bascunan* case is quite different from the one before this Court. *Bascunan* interpreted the civil suit provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Civil RICO gives a private right of action to "[a]ny person *injured in his business or property* by reason of a violation of [RICO's substantive provisions, codified in Section 1962]." *Bascunan*, 874 F.3d at 809 (emphasis added). This "domestic injury" requirement was discussed extensively in *Bascunan*. The Defendants interpret this discussion in *Bascunan* as an independent requirement apart from its RICO origins, even appearing to suggest that it should be applied in every extraterritorial analysis regardless of the statute at issue. *See* Motion at 6 (characterizing the "domestic injury" requirement as "an extraterritoriality standard" set out in the *RJR Nabisco* case). But Defendants' position ignores that *Bascunan* specifically framed the question before it as "whether the plaintiffs have plausibly alleged 'a domestic injury' to their business or property *within the meaning of Section 1964(c)*. . . ." *Id.* at 809 (emphasis added). Said another way, the court in *Bascunan* analyzed whether the plaintiffs had satisfied the requirements for a civil RICO claim. The court did so in light of the Supreme Court's recent ruling in *RJR Nabisco v. European Community*, 136 S. Ct. 2090 (2016), which held that RICO's civil suit provision did not apply extraterritorially. More specifically, the Supreme Court held that "Section 1964(c) requires a civil RICO plaintiff to allege and prove a *domestic* injury to business or property and does not allow recovery for foreign injuries." *Id.* at 2111 (emphasis in original). The Supreme Court stated that:

> Section 1964(c) allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue for treble damages, costs, and attorney's

4

> fees. Irrespective of any extraterritorial application of § 1962, we conclude that § 1964(c) does not overcome the presumption against extraterritoriality. A private RICO plaintiff therefore must allege and prove a *domestic* injury to its business or property.

*Id*. at 2106 (emphasis in original). Thus, it is clear that the domestic injury requirement is one embedded in the RICO statute – that is to say, it is the focus of that statute's concern. *Id*. at 2106.

Given the ruling in RJR Nabisco, the task before the Second Circuit in *Bascunan* was to determine whether the alleged injury under the civil RICO statute took place in the United States or overseas. *See Bascunan*, 874 F.3d at 809. Not surprisingly then, the Court in *Bascunan* engaged in an extensive discussion regarding what constitutes an injury under the civil RICO statute. *See id*. at 817-18. So while the Defendants assert that the Second Circuit "spoke broadly against using a defendant's mere use of the U.S. banking system as a basis for asserting the jurisdiction of U.S. courts over their transactions," Motion at 6, the passages of *Bascunan* that are cited by the Defendants all explicitly relate to where and how the alleged civil RICO "injury" in *Bascunan* took place. *See Bascunan*, 874 F.3d at 819.

In the Arcapita memorandum decision, by contrast, this Court was tasked with interpretation of Section 547 of the Bankruptcy Code, relating to avoidance of preferential transfers. The Court's inquiry was distinct from *Bascunan* because, as this Court stated in the memorandum decision, the "focus of the Bankruptcy Code's avoidance and recovery provisions is the initial transfer that depletes the property that would have become property of the estate." *See In re Arcapita*, 575 B.R. at 244 (quoting *In re Ampal-American Israel Corp.*, 562 B.R. 601, 613 (Bankr. S.D.N.Y. 2017 (citing cases)). Similar to *Bascunan*, and as required by the Supreme Court decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), once the Court in the memorandum decision determined the focus of the statute, it then set about determining

5

whether the activity that is the focus of the statute had taken place in the United States or overseas. The Court held that this case involved a permissible domestic application of the statute because the conduct in question—the transfers between Arcapita and the Defendants—took place in the United States. *See id*. at 245. This inquiry is distinct from an analysis of where the injury occurred; that later focus is a reflection of the civil RICO statute as interpreted by the Supreme Court and Second Circuit. Thus, the Second Circuit's analysis in *Bascunan* does not constitute an intervening change in law for purposes of this case.

For similar reasons, the Court also rejects the Defendants' argument that *Bascunan* requires this Court to reverse its decision not to abstain from hearing this case on grounds of international comity. Indeed, the *Bascunan* case does not address international comity or jurisdictional abstention. Moreover, it deals with a completely distinct fact pattern and federal statute. It also does not involve a bankruptcy proceeding, a fact quite relevant to this Court's conclusion on international comity.

    B. <u>Overlooking Controlling Authority</u>

As to its second argument, the Defendants assert that the Court has overlooked controlling authority of the Second Circuit relating to extraterritoriality. When examining whether the conduct in question took place in the United States or abroad, the Court's memorandum decision declined to follow the "component events" test of *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 186 B.R. 807 (S.D.N.Y. 1995). The Court noted that a similar analysis—the "conduct and effects" test—was abrogated by the later Supreme Court decision of *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247. Instead, this Court relied on the standard announced by the Supreme Court in *Morrison* that examines the "focus" of the statute, *i.e.*, the "objects of the statute's solicitude" or

"those transactions that the statute seeks to regulate." *Id.* at 267. The Defendants nonetheless argue that Second Circuit cases decided subsequent to *Morrison* require the Court to evaluate "all relevant conduct within a statute's focus" to determine whether the conduct was domestic or foreign, even suggesting that the Court must examine each element of Section 547 to determine if it took place in the United States. *See* Motion at 2.

But Defendant's second argument fares no better than the first. As an initial matter, the cases cited by the Defendants specify that the conduct to be examined for an extraterritoriality inquiry is the conduct that is the focus of the statutory provision or the object of the statute's solicitude, and that is the very test applied by this Court in the memorandum decision. *See Microsoft Corp. v. U.S. (In re Warrant)*, 829 F.3d 197, 216 (2d Cir. 2016); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 183-84 (2d Cir. 2014); *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 215 (2d Cir. 2016). Moreover, the question of which test should be applied for extraterritoriality was briefed by the parties and discussed extensively by the Court in the memorandum decision. Indeed, extensive portions of the Defendants' motion simply reargue the legal standard and this Court's interpretation of it from a new viewpoint in light of the Court's ruling. *See, e.g.*, Motion at 15 n.18. For example, the Defendants once again rely upon when they acquired full title to the funds that were transferred and when this occurred, an issue previously briefed and discussed by the Court. *See* Motion at 2, 16; *In re Arcapita*, 575 B.R. at 247 (noting Defendants' focus not on the transfers, but on component events, including financial aspects of the transaction). In the same vein, the Defendants once again cite to the number of contacts with the United States. *See* Motion at 12 n. 16 (citing *U.S. v. Prevezon*, 2017 WL 1951142 (S.D.N.Y. May 10, 2017)); *In re Arcapita*, 575 B.R. at 248 (specifically discussing *Prevezon* and Defendants' argument about number of contacts and extent of significant activity).

7

It is inappropriate to revisit such issues now. *See Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) ("These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court."); *Perez*, 46 F. Supp. 3d at 314 (Federal Rule 59(e) and Bankruptcy Rule 9023 "are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.").

In addition to these two arguments, the Court notes that Defendants also raise new legal arguments not previously raised in the underlying motions. *See, e.g.,* Motion at 9-10 (raising practical arguments about the policy implications of the Court's decision); Motion at 4 n.9, 17 n.20 (arguing that preference claims in the complaint fail to meet the *Iqbal* pleading standard for surviving a motion to dismiss). But such new arguments are not an appropriate basis for relief in a motion for reconsideration. *See Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.") (citations and quotation marks omitted); *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (motion for reargument is not an opportunity to present the case under new theories, secure a rehearing on the merits, or otherwise take a "second bite at the apple.").

For all those reasons the reconsideration motion is denied.

Dated: New York, New York
      February 5, 2018

                                                                    */s/ Sean H. Lane*
                                                                    UNITED STATES BANKRUPTCY JUDGE