**UNITED STATES BANKRUPTCY COURT**      **FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                  Chapter 11

ARCAPITA BANK B.S.C.(c), *et al.*       Case No. 12-11076 (SHL)

               Reorganized Debtors.       (Jointly Administered)
----------------------------------------------------------------x
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c),
*et al.*,

               Plaintiff,
           vs.
                                                 Adv. Pro. No. 13-01434
(SHL)
BAHRAIN ISLAMIC BANK,

               Defendant.
----------------------------------------------------------------x
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c),
*et al.*,

               Plaintiff,
           vs.
                                                 Adv. Pro. No. 13-01435
(SHL)
TADHAMON CAPITAL B.S.C.,

               Defendant.
----------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

MILBANK, TWEED, HADLEY & McCLOY LLP
*Counsel for Official Committee of Unsecured Creditors
of Arcapita Bank B.S.C.(c), et al.*
  By:   Dennis F. Dunne, Esq.
         Evan R. Fleck, Esq.
55 Hudson Yards
New York, New York 10001

    -and-

By:  Andrew M. Leblanc, Esq.
       Samir L. Vora, Esq.
1850 K Street, NW, Suite 1100
Washington, D.C. 20006

K&L GATES LLP
*Counsel for Bahrain Islamic Bank and Tadhamon Capital B.S.C.*
By:  John A. Bicks, Esq.
       Brian D. Koosed, Esq.
599 Lexington Avenue
New York, New York 10022

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the plaintiff's request for entry of proposed orders (the "Proposed Orders")[1] granting the summary judgment motions of the Official Committee of Unsecured Creditors (the "Committee") of Arcapita Bank B.S.C.(c) and its affiliated debtors (collectively, the "Debtors") and denying the cross-motions for summary judgment of Bahrain Islamic Bank ("BisB") and Tadhamon Capital B.S.C. ("Tadhamon" and, together with BisB, the "Defendants").[2] The Defendants raise two objections to the Proposed Orders: 1) the Committee requests an inappropriate rate of prejudgment interest, and 2) the Proposed Orders should include language allowing each Defendant a general unsecured claim against the Debtors' bankruptcy estate in the event that the Defendants satisfy the respective judgments against them in full in these adversary proceedings. *See Obj. to Proposed Orders Granting Pl.'s Mot. for Summ. J. and Denying Defs.' Cross-Mot. for Summ. J.* at 1–3 [Adv. Pro. No. 13-01434, ECF No. 99; Adv. Pro.

---

[1]    *See Proposed Order Granting Pl.'s Mot. for Summ. J. and Denying Defs.' Cross-Mot. for Summ. J.* [Adv. Pro. No. 13-01434, ECF No. 98]; *Proposed Order Granting Pl.'s Mot. for Summ. J. and Denying Defs.' Cross-Mot. for Summ. J.* [Adv. Pro. No. 13-01435, ECF No. 100].

[2]    Because the Proposed Orders filed in each adversary proceeding raise substantially similar issues and the objections are essentially identical, the Court has chosen to address them together in this decision.

No. 13-01435, ECF No. 101] (the "Objections"). For the reasons set forth below, the Objections to the Proposed Orders are denied.

## BACKGROUND

Familiarity with the underlying facts of these adversary proceedings is presumed. *See Off. Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 628 B.R. 414 (Bankr. S.D.N.Y. 2021). Prior to its bankruptcy filing, Arcapita was licensed as an Islamic wholesale bank by the Central Bank of Bahrain and operated as an investment bank and global manager of Shari'a-compliant alternative investments. *See id.* at 423. Arcapita maintained a prepetition business relationship with each of the Defendants, through which Arcapita and the Defendants made several Shari'a-compliant short-term investments with one another. *See id.* at 423–29. Upon its bankruptcy filing, Arcapita attempted to recover the proceeds of certain investments it had made with the Defendants, but the Defendants asserted that they had exercised a purported right to a setoff under Bahraini law of the debts owing between themselves and Arcapita. *See id.* at 429–31. The Committee filed the above-captioned adversary proceedings against the Defendants to seek, among other things, damages for breach of contract and violation of the automatic stay, turnover of the investment proceeds in question and claims disallowance. *See id.* at 430–31.

Numerous issues have already been adjudicated in these adversary proceedings relating to whether certain funds constituted assets of the estate, as well as personal jurisdiction, comity, and extraterritorial application of several sections of the Bankruptcy Code. *See Official Committee of Unsecured Creditors v. Bahrain Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c))*, 2018 WL 718399 (Bankr. S.D.N.Y. Feb. 5, 2018); *Official Committee of Unsecured Creditors v. Bahrain Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita*

3

*Bank B.S.C.(c))*, 575 B.R. 229 (Bankr. S.D.N.Y. 2017); *Official Committee of Unsecured Creditors v. Bahrain Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c))*, 529 B.R. 57 (Bankr. S.D.N.Y. 2015); *Baeshen v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 520 B.R. 15 (Bankr. S.D.N.Y. 2014). On April 23, 2021, this Court issued a *Memorandum of Decision* (the "Decision") granting the Committee's summary judgment motions and denying the Defendants' cross-motions for summary judgment in the respective adversary proceedings. *See generally In re Arcapita,* 628 B.R. 414. The Decision granted summary judgment to the Committee on its claims for breach of contract under Bahraini law and for turnover under Section 542(b) of the Bankruptcy Code. *See id.* at 476–79. While the Court also granted summary judgement on the Committee's claim for violation of the automatic stay under Section 362(a) of the Bankruptcy Code, it denied damages with respect to the stay violation. *See id.* at 479–481; *see also* Objections at 6.

A. **Prejudgment Interest Generally**

Both the award of prejudgment interest and the rate at which it is set are matters within the discretion of the Court. *See Endico Potatoes v. CIT Grp./Factoring*, 67 F.3d 1063, 1071 (2d Cir. 1995) ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion. . . .") (citations and quotations omitted). But while an award of prejudgment interest is discretionary, it should be awarded absent a sound reason to deny it. *See Savage & Assocs. v. Mandl (In re Teligent Inc.)*, 380 B.R. 324, 344 (Bankr. S.D.N.Y. 2008) (citations omitted). When determining whether prejudgment interest should be awarded, "courts in this Circuit look to the source of the law underlying plaintiff's claims: claims that arise out of federal law are governed by federal rules,

4

claims arising out of state law are governed by state rules." *Kittay v. Korff (In re Palermo)*, 739 F.3d 99, 107 (2d Cir. 2014). In a determination on prejudgment interest, a court should consider:

> (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). "Pre-judgment interest is not a penalty, but rather is viewed as delayed damages to be awarded as a component of compensation to the prevailing party." *Davis v. R.A. Brooks Trucking, Co. (In re Quebecor World (USA), Inc.)*, 491 B.R. 379, 389 (Bankr. S.D.N.Y. 2013). But "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff." *Wickham*, 955 F.2d at 834.

The Committee requests a prejudgment interest rate equal to the New York state statutory rate of 9%. *See Off. Comm. of Unsecured Creditors' Reply in Supp. of its Proposed Order for Entry of J.* at 10 [Adv. No. 13-01434, ECF No. 100; Adv. No. 1-01435, ECF No. 102] (the "Reply"). The Defendants dispute that an award of prejudgment interest is appropriate, arguing that the payment of interest violates Islamic Shari'a. *See* Objections at 2. The Defendants further argue that there is no basis for applying the New York statutory rate, since the claims at issue arise under either Bahraini or U.S. federal law. *See id.* at 6. But if the Court does grant prejudgment interest, the Defendants contend that it should be set at the federal treasury rate under 28 U.S.C. § 1961(a), which they calculate to be 0.738% for the applicable time period. *See id.* at 4; *see also Defs.' Counter-Proposed Order Granting Pl.'s Mot. for Summ. J. and Denying Defs.' Cross-Mot. for Summ. J.*, attached as Exhibits A and B to the Objections; Hr'g Tr. at 32:15:16 (June 10, 2021) [Adv. No. 13-01434, ECF No. 101, Adv. No. 13-01435, ECF No. 103].

In the current case, the governing law for the contracts is the law of the Kingdom of Bahrain, and the Court will therefore look to Bahraini law for guidance. *See PNCEF, LLC v. Omni Watch & Clock Co.*, 2010 U.S. Dist. LEXIS 102910, at *19 (E.D.N.Y. Sep. 24, 2010) ("In a contract action with a choice of law provision, the substantive law of the chosen jurisdiction controls the award of prejudgment interest.") (citing *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 614 (2d Cir. 1996)). While Bahraini law does not specifically provide for prejudgment interest, Article 223 of the Bahraini Civil Code allows for parties to recover as a component of damages, "losses suffered by the creditor and profits of which he has been deprived" upon the breach of a contract. *Decl. of Kavon M. Khani in Supp. of the Off. Comm. of Unsecured Creditors' Mot. for Summ. J.*, Ex. X at Art. 223 [Adv. No. 13-01435, ECF No. 70]. Additionally, Article 140(a) of the Bahraini Civil Code provides that "[i]n bilateral binding contracts if one of the parties does not perform his obligation, the other party may . . . demand from the judge the performance . . . of the contract, with damages[.]" *Id.* at Art. 140. Article 188 of the Bahraini Civil Code further provides that a party that has received "that which is not due to him" in bad faith must "restitute in addition the interest and profit that he has gained or that he has failed to gain by neglect on the thing unduly received[.]" *Id.* at Art. 188. So while Bahraini law does not award interest, the Bahraini Civil Code provisions cited above are consistent with the compensatory purpose of prejudgment interest under American law in providing compensation to the wronged party. *See, e.g.*, *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 880 (2d Cir. 1988) ("[P]rejudgment interest obviously serves the compensatory purpose by making up for the delay in receiving the money . . . ."); *see also Wickham*, 955 F.2d at 833.

The Court believes that compensation in the form of prejudgment interest is appropriate in the circumstances of these cases. The Defendants have withheld the money owed to the

Debtors for close to a decade—and indeed still has not been paid. This is true despite the direction of the Central Bank of Bahrain to the Defendants to return the funds to Arcapita. *See In re Arcapita*, 628 B.R. at 426–30. During that time, the estate has been deprived of the use of these funds. Thus, not only was the money unavailable for distribution to the Debtors' creditors and equity holders, but it was also unavailable for the administration of the Debtors' bankruptcy case. *See Wickham*, 955 F.2d at 834 (noting that prejudgment interest is a function of, among other things, the need to compensate the wronged party for damages and considerations of fairness and the equities of the award). Indeed, the Debtors were eventually forced to borrow funds to administer the cases under a debtor-in-possession financing facility. *See generally Debtors' Mot. to Enter Into and Perform Under DIP Agreement* [Case No. 12-11076, ECF No. 690].

B. **Appropriate Rate for Prejudgment Interest**

Having determined that the Committee is entitled to prejudgment interest, the question now is the rate for such interest. The Second Circuit has offered helpful guidance on this question:

> The suitability of that postjudgment rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government. The court may, for example, consider whether the plaintiff would have invested the money at some higher rate . . . or it may take into account the rate of interest the defendant would have had to pay to borrow the money it withheld from the plaintiff . . . .

*Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139–40 (2d Cir. 2000). For example, this Court has applied these principles in *Ames Merch. Corp. v. Unical Enters. (In re Ames Dep't Stores)*, 2010 Bankr. LEXIS 5115, at *3–4 (Bankr. S.D.N.Y. Sep. 10, 2010). In *Ames*, the Court

7

concluded that these considerations weighed in favor of awarding prejudgment interest. As it explained:

> Ames has been denied the funds that went out to defendant Unical for many years, and, in the early years of this case, needed to borrow money under its DIP financing facility; it is only fair to compensate it, at least to some extent, for the incremental interest expense it thereby had to incur. And the remedial purpose of the statute is to recover funds from favored creditors for the benefit of the creditor community generally, and it is unfair for the remainder of the creditor community to subsidize a losing preference defendant by providing what is in essence an interest-free loan.

*Id.*

The Committee argues that because the governing law—here the law of Bahraini—does not set a specific rate for damages in these circumstances, the Court should exercise its discretion to apply the New York statutory interest rate. The Defendants argue for the much lower federal treasury rate under 28 U.S.C. § 1961(a), which they calculate at 0.738% for the applicable period of time. In assessing these competing views, the Court will look to the law applicable to the claims here, the facts of the case and the connection to New York.

1. Causes of Action

This Court's Decision granted summary judgment to the Committee on two of its claims: (i) breach of contract under Bahraini law, and (ii) turnover under Section 542(b) of the Bankruptcy Code. *See In re Arcapita*, 628 B.R at 476–79.

With respect to the breach of contract claim, state law generally governs the calculation of prejudgment interest on state law breach of contract claims. *See Adrian v. Town of Yorktown*, 620 F.3d, 104, 107 (2d Cir. 2010) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). The Court here looks to the concept of compensation incorporated in Bahraini law, which is the applicable law under the contracts in question. *See* Reply at 3. As for the Committee's request for turnover under Section 542(b), a turnover action pursuant to the Bankruptcy Code is

the mechanism for monetizing the receivable owed to the estate. But while "[a] turnover claim is asserted as a matter of federal bankruptcy law . . . the underlying property rights that are enforced through a turnover claim are governed by state law." *Tapmasters Hoboken, LLC v. Blackrock Millwork Co., LLC (In re Tapmasters Chelsea, LLC)*, 621 B.R. 580, 584 (Bankr. S.D.N.Y. 2020). As courts have considered the relevant state law when calculating prejudgment interest for a turnover claim, the Court here will look to the Bahraini law cited above that is designed to compensate the wronged party.

2. Facts of the Case

In keeping with the compensatory rationale of both Bahraini and U.S. law, the Court looks to the specific facts of these cases to determine the appropriate rate of prejudgment interest, specifically the lost profit opportunities to the Arcapita estate and any costs that the estate suffered as a result of being deprived of the funds. The Committee identifies three other interest rates that are particularly relevant to the Court's analysis.

First, the Committee points to the rate of return that was available in the Bahraini investment market during the near decade of time that the money has been held by the Defendants. The Committee notes that the most fitting point of reference is a $12 million placement that Tadhamon made with Arcapita in November 2011 for a six month term. *See In re Arcapita*, 628 B.R. at 426. The expected profit on that placement was $485,333.33, which the Committee notes equals a return of approximately 4.04% over six months or 8.08% on an annualized basis. *See id.*; *see also* Reply at 14; Hr'g Tr. 14:1–12 (June 10, 2021). The Defendants counter that the most appropriate rates are those set in the transactions that were actually at issue in the summary judgement decision, which range from .55 percent to two percent. *See* Objections at 9. But these transactions were extremely short term financings of two

9

to four weeks each, *see In re Arcapita,* 628 B.R. at 423–29, and the Court finds the annualized rate cited by the Committee to be more appropriate. Indeed, the interest rate urged by the Defendants would appear to severely undercompensate the estate.

Second, the Committee cites the cost of the debtor-in-possession financing in this case. The facility was in the form of a commodity murabaha, which did not specify a traditional rate of interest to remain Shari'a compliant. *See Debtors' Mot. to Enter Into and Perform Under DIP Agreement* at 14–15. But the profit rate on the transaction was pegged to LIBOR plus ten percent, with a two percent LIBOR floor, resulting in a rate of return of not less than twelve percent. *See id.* at 7.

Third, the Committee looks to the rate of return that could have been achieved if the funds in question had been invested elsewhere. *See Comm. of Unsecured Creditors of Interstate Cigar Co. v. Interstate Distribution, Inc. (In re Interstate Cigar Co.)*, 2002 Bankr. LEXIS 781, at *14 (Bankr. E.D.N.Y. July 26, 2002) (in setting an award of prejudgment interest, noting that "[i]t is also appropriate to look at the rate of interest which the Debtor would have enjoyed had the Debtor been able to invest an amount equal to the judgment" and that "during the time period running from the date of the complaint to the present, the stock market enjoyed sizeable gains, even including the recent downturn"). For example, the Committee notes that if the transaction proceeds had been conservatively invested in an S&P 500 index fund during the period of time in question, the Arcapita estate would have realized annualized returns of 12.375%. *See* Reply at 14 (citing to https://dqydj.com/sp-500-return-calculator/, and calculating return for the period of April 2012 – April 2021). An investment in the Dow Jones Industrial Average would have realized annualized returns of 11.072%. *See id.* (citing to https://dqydj.com/dow-jones-return-calculator/, and calculating return for the period of April 2012 – April 2021). And investment in

10

the Russell 2000 would have realized annualized returns of 13.13%. *See id.* (citing to https://www.customstockalerts.com/stockReturnCalculator, and calculating a return for the period of April 2012 – April 2021). All of these returns are significantly above the 9% interest requested by the Committee.

    3. <u>Connection to New York</u>

As noted above, the Committee argues that the interest rate be set at the New York statutory rate of 9%, asserting that the New York statutory rate is appropriate because New York is the state in which this Court sits. The Defendants assert that these cases are unrelated to New York. But as the District Court noted in its decision in these cases on personal jurisdiction, the Defendants' use of New York correspondent bank accounts to receive funds from Arcapita constituted the transaction of business in New York and met the threshold of minimum contacts necessary to assert personal jurisdiction over the Defendants. *See Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 549 B.R. 56, 67–71 (S.D.N.Y. 2016), *rev'g Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 529 B.R. 57 (Bankr. S.D.N.Y. 2015). The District Court noted the importance of the New York connections in this proceeding, citing "[t]he Banks' deliberate choice to utilize the New York correspondent bank accounts and, more generally, New York's and the United States's banking system . . . ." *In re Arcapita*, 549 B.R. at 70. The District Court further stated that "the Banks deliberately chose to effectuate the Placements by directing the transfer of millions of dollars through New York." *Id.* at 71. In any event, the Court does not rest its decision on the appropriate rate of prejudgment interest solely on this dispute's connection to New York. Rather, the Court considers the New York statutory rate as one of several factors in exercising its discretion to set an appropriate rate,

along with the other factors unique to this case discussed above, including the rate of return available in the Bahraini investment market, the cost of the Debtors' debtor-in-possession financing in its bankruptcy case and the rate of return generally available during this time.

Considering New York's connection to the suit—as recognized by the District Court—and the other factors identified above, the Court finds it appropriate to set the rate of prejudgment interest at the rate of 9% requested by the Committee.

### C. **Defendants' Requested Language Regarding Claims**

The Defendants request that language be added to the Proposed Orders that provides each Defendant with an allowed general unsecured claim against the Debtors' bankruptcy estate for the amount of the returned investment proceeds upon satisfaction of the judgment in full in these adversary proceedings. The Proposed Orders merely contain general language that reserves the Defendants' rights against the Debtors' bankruptcy estate upon payment of the judgment. *See* Proposed Orders ¶ V.

At the hearing on these Proposed Orders, the Defendants argued for this language as the corollary to the Committee's request for claims disallowance under Section 502. *See* Hr'g Tr. 38:24–39:1 (June 10, 2021). But the Court did not grant the Committee's request for claims disallowance in its Decision and similarly will not include the Defendants' requested language here. *See In re Arcapita*, 628 B.R. at 479 n.67; Hr'g Tr. 39:2–11. The status of the claims remains to be determined based on how the case proceeds, and all parties reserve their rights with respect to this issue.[3]

---

[3] The Court has reviewed the other arguments contained in the Objections and rejects them as without merit.

## **CONCLUSION**

For the reasons stated above, the Defendants' Objections are denied. The Court will enter orders that are consistent with this decision.

Dated: New York, New York
      September 22, 2021

                                    */s/ Sean H. Lane*
                                    UNITED STATES BANKRUPTCY JUDGE